IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| HARLEY T. MILLER,<br>No. S00346, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| vs. | )    Case No. 15-cv-01298-MJR<br>) |
| WARDEN STEPHEN DUNCAN,<br>R. BAYLOR,<br>ALLAN DALLAS,<br>JERREMY BUTTRUM, and<br>JOHNS DOES #1-4, | )<br>)<br>)<br>)<br>) |
| Defendants. | )<br>) |

## MEMORANDUM AND ORDER

**REAGAN, Chief District Judge:**

Plaintiff Harley T. Miller is an inmate currently housed in Lawrence Correctional Center. Pursuant to 42 U.S.C. § 1983, Plaintiff brings this action for deprivations of his constitutional rights with respect to how prison officials responded to his attempts to receive medical and/or psychiatric attention.

This case is now before the Court for a preliminary review of the complaint pursuant to 28 U.S.C. § 1915A. The Court is required to dismiss any portion of the complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief. 28 U.S.C. § 1915A(b).

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective

standard that refers to a claim that any reasonable person would find meritless. *Lee v. Clinton,* 209 F.3d 1025, 1026-27 (7th Cir. 2000). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id*. at 557. At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

## The Complaint

According to the complaint, on September 23, 2014, Plaintiff Miller informed C/O Jeremy Buttrum that he needed to speak with a Crisis Team/mental health professional. Documentation attached to the complaint indicates that Plaintiff had a variety of health concerns that he thought were not being addressed, such as rectal bleeding after bowl movements, abdominal pain, and a self-discovered lump in his abdomen. Buttrum did not summon assistance; rather, he issued Plaintiff a purportedly false disciplinary report, charging him with insolence and disobeying a direct order (*see* Doc. 1-1, P. 27).[1] Plaintiff next tried to explain his request to speak with to Lt. R. Baylor a Crisis Team/mental health professional. Baylor responded by handcuffing Plaintiff so tightly that Plaintiff's skin was broken and he was in pain; Plaintiff was also threatened with "extreme violence," saying that he, Baylor, should "smash Plaintiff's

---

[1] The dismissal of the disciplinary report as being outside the applicable time frame raises the question of whether the report was issued on September 23, 2014, or later.

face off the pavement" for "doing stupid shit at this time of day" (Doc. 1, p.11; Doc. 1-1, p. 5).  Baylor escorted Plaintiff to administrative segregation, where he remained for two days.

Upon placement in administrative segregation, Plaintiff's requests to four "John Doe" correctional officers to see a Crisis Team/mental health professional went unanswered, and he was denied access to prescribed medication.  During Plaintiff's time in segregation, the John Doe correctional officers also refused to officially record that he had announced a hunger strike and was refusing medication.  On September 24, Plaintiff related to Lt. Allan Dallas how the John Doe correctional officers had not allowed him to see a Crisis Team/mental health professional, denied him access to prescribed medication, and had failed to record his hunger strike and refusal of medication.  Although the complaint does not specify Dallas's response, it is suggested that Dallas was "recklessly indifferent" to Plaintiff's plight.

On September 25, Plaintiff purportedly attempted suicide by wrapping a bedsheet around his neck.  "John Doe" correctional officers threatened to spray Plaintiff with mace if he failed to comply with the order to untie the sheet from his neck.  It was only after the suicide attempt that Plaintiff's hunger strike and refusal of medication was recorded (*see* Doc. 1-1, p. 39).  Plaintiff ended his hunger strike on the morning of September 27, after just over two days (*see* Doc. 1-1, p. 39).  Ultimately, Plaintiff's disciplinary report was expunged because it was untimely, but it does record that Plaintiff had stated that he would "do crazy stuff to get out of here" (Doc. 1-1, p. 27).

Plaintiff contends Defendants Warden Stephen Duncan, Lt. Baylor, Lt. Dallas, C/O Buttrum and "John Doe" officers #1-4 violated his Eighth Amendment rights by subjecting him to cruel and unusual punishment, being deliberately indifferent to his serious medical needs, and failing to keep him safe from self-harm.  Compensatory damages are sought.

Based on the allegations in the complaint, the Court finds it convenient to frame the *pro se* action as follows.

> **Count 1:  C/O Buttrum and Lt. Baylor violated Plaintiff's rights under the Eighth Amendment by being deliberately indifferent to his serious medical needs;**
>
> **Count 2:  Lt. Baylor violated the Eighth Amendment when he (a) used excessive force in handcuffing Plaintiff, and (b) threatened Plaintiff;**
>
> **Count 3:  "John Does" #1-4 violated Plaintiff's rights under the Eighth Amendment when they (a) were deliberately indifferent to his serious medical needs, and (b) failed to record his hunger/medication strike;**
>
> **Count 4:  Lt. Dallas violated the Eighth Amendment when he was recklessly or deliberately indifferent to Plaintiff's serious medical needs;**
>
> **Count 5:  "John Does" #1-4 violated Plaintiff's rights under the Eighth Amendment when they threatened to mace Plaintiff if he did not untie the bedsheet from around his neck.**

Any claim that has not been recognized should be considered dismissed without prejudice as having been inadequately stated under the *Twombly* pleading standard. The allegations about Plaintiff being issued a false disciplinary report appear to have been included to demonstrate deliberate indifference, not an independent legal claim.

**Discussion**

The Eighth Amendment to the United States Constitution protects prisoners from being subjected to cruel and unusual punishment. U.S. CONST., amend. VIII. *See also Berry v. Peterman*, 604 F.3d 435, 439 (7th Cir. 2010). Eighth Amendment protection extends to conditions of confinement that pose a substantial risk of serious harm, including health and safety. *See Estate of Miller, ex rel. Bertram v. Tobiasz*, 680 F.3d 984 (7th Cir. 2012).

Prison officials can violate the Eighth Amendment's proscription against cruel and unusual punishment when their conduct demonstrates "deliberate indifference to serious medical needs of prisoners." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). A prison official may be liable "only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer v. Brennan*, 511 U.S. 825, 847 (1994). Proving deliberate indifference, however, requires more than a showing of negligent or even grossly negligent behavior. *Id*. at 835. Rather, the corrections officer must have acted with the equivalent of criminal recklessness. *Id*. at 836–37. Once prison officials know about a serious risk of harm, they have an obligation "to take reasonable measures to abate it," even if harm is not averted. *Borello v. Allison*, 446 F.3d 742, 747 (7th Cir. 2006); *see also Dale v. Poston*, 548 F.3d 563, 569 (7th Cir. 2008). Even those not directly involved in providing medical care—"non-medical defendants"—can be liable. *See Perez v Fenoglio*, 792 F.3d 768, 781-782 (7th Cir. 2015). Relative to this case, it is noted that deliberate indifference to a risk

of suicide can violate the Eighth Amendment. *See Pittman ex rel. Hamilton v. Cty. of Madison, Ill.*, 746 F.3d 766, 775-76 (7th Cir. 2014).

The intentional use of excessive force by prison guards against an inmate without penological justification can also constitute cruel and unusual punishment. *See Wilkins v. Gaddy*, 559 U.S. 34 (2010); *DeWalt v. Carter*, 224 F.3d 607, 619 (7th Cir. 2000). Even threats of grave violence constitute cruel and unusual punishment. *Dobbey v. Ill. Dep't of Corr.*, 574 F.3d 443, 445 (7th Cir. 2009); *Hughes v. Farris*, No. 15-1801, 2015 WL 8025491, at *2 (7th Cir. Dec. 7, 2015).

### Counts 1, 3 and 4

Counts 1, 3 and 4 state colorable Eighth Amendment claims. Counts 2 and 5, as well as the involvement of Warden Duncan, require further discussion.

### Count 2

Count 2 pertains to Lt. Baylor (a) using excessive force in cuffing Plaintiff, and (b) threatening Plaintiff with "extreme violence" by saying that he, Baylor, should "smash Plaintiff's face off the pavement" for "doing stupid shit at this time of day." The allegations regarding using excessive force when handcuffing Plaintiff fall within the ambit of the Eighth Amendment, so that aspect of Count 2 shall proceed. As the complaint itself indicates, the "extreme violence" Lt. Baylor threatened was only an aside expressing frustration and/or anger. It is unreasonable to perceive a serious threat of harm from that remark in that context, and one would have to ignore that Baylor prefaced the remark with "should." That aspect of Count 2 will be dismissed without prejudice.

### Count 5

The allegation in Count 5 that the "John Doe" defendants threatened to mace Plaintiff if he did not untie the bedsheet from around his neck fails to state a colorable Eighth Amendment claim. The sparse description suggests Defendants may have been callous, but there is insufficient detail to suggest Defendants were deliberately indifferent. One is left wondering in what state did Defendants encounter Plaintiff, and what else occurred. Count 5, therefore, will be dismissed without prejudice in accordance with the *Twombly* pleading standard.

### Warden Duncan

Section 1983 creates a cause of action based on personal liability and predicated upon fault; thus, "to be liable under [Section] 1983, an individual defendant must have caused or participated in a constitutional deprivation." *Pepper v. Village of Oak Park*, 430 F.3d 809, 810 (7th Cir. 2005) (citations omitted). The narrative of the complaint does not mention Warden Stephen Duncan. Merely naming a defendant in the caption is insufficient to state a claim. *See Collins v. Kibort*, 143 F.3d 331, 334 (7th Cir. 1998). Furthermore, the *respondeat superior* doctrine—supervisory liability—does not apply to actions filed under 42 U.S.C. § 1983. *See, e.g., Kinslow v. Pullara*, 538 F.3d 687, 692 (7th Cir. 2008). Warden Duncan will be dismissed without prejudice.

### Disposition

**IT IS HEREBY ORDERED** that, for the reasons stated, Defendant **WARDEN STEPHEN DUNCAN** is **DISMISSED without prejudice**.

**IT IS FURTHER ORDERED** that the aspect of **COUNT 2** pertaining to the purported threat made against Plaintiff is **DISMISSED without prejudice**; **COUNT 2** shall otherwise **PROCEED** relative to the claim that Plaintiff was handcuffed too tightly.

**IT IS FURTHER ORDERED** that **COUNT 5** is **DISMISSED without prejudice**.

**IT IS FURTHER ORDERED** that **COUNTS 1, 3 and 4** shall **PROCEED** against Defendants **R. BAYLOR, ALLAN DULLAS, JEREMY BUTTRUM and "JOHN DOES" #1-4**.

The Clerk of Court shall prepare for Defendants **R. BAYLOR, ALLAN DULLAS, and JEREMY BUTTRUM**:  (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons).  The Clerk is **DIRECTED** to mail these forms, a copy of the complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff.

Service shall not be made on the unknown "John Doe" defendants until such time as Plaintiff has identified them by name in a properly filed amended complaint. Plaintiff is **ADVISED** that it is Plaintiff's responsibility to provide the Court with the names and service addresses for these individuals.

If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

With respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address.  This information shall be used only for sending the forms as directed above or for formally effecting service.  Any documentation of the address shall be retained only by the Clerk.  Address information shall not be maintained in the court file or disclosed by the Clerk.

Plaintiff shall serve upon Defendants (or upon defense counsel once an appearance is entered), a copy of every pleading or other document submitted for consideration by the Court.  Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendants or counsel.  Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to **United States Magistrate Judge Stephen C. Williams** for further pre-trial proceedings.

Further, this entire matter shall be **REFERRED** to a United States Magistrate for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs,

notwithstanding that his application to proceed *in forma pauperis* may have been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against Plaintiff and remit the balance to Plaintiff. Local Rule 3.1(c)(1).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

DATED: December 18, 2015

s/ *Michael J. Reagan*
**MICHAEL J. REAGAN**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**